# United States District Court
# Eastern District of Michigan
# Southern Division

United States of America,            Criminal No. 25-mj-30073

        Plaintiff,

v.

HAIDAR ABO AYEDH ALMUNTASER,

        Defendant.
_____/

**United States' Brief and Written Proffer in Support of Detention**

       The defendant, a native and citizen of Yemen, is charged by indictment out of the Southern District of Alabama with a conspiracy to commit international money laundering in violation of 18 U.S.C. § 1956(h). He unlawfully entered the United States along the southern border between points of inspection on March 30, 2021. Accordingly, ICE has lodged a detainer with the U.S. Marshals. The government seeks the defendant's detention pending resolution of these criminal proceedings because the preponderance of the evidence demonstrates that the defendant is a risk of flight and non-appearance.

1

I.   Facts

A.   **The investigation and offense conduct, and prior immigration history Background about the defendant**

The defendant is a 30year-old native and citizen of Yemen who first illegally entered the United States in 2021.

A grand jury in the Southern District of Alabama charged Almuntaser with one count of international money laundering conspiracy. As alleged in the indictment, Salim Mohamed Yehya Alsahqani ("Salim") and Nagi Nassar Alsahqani ("Nagi") wired thousands of dollars from the Southern District of Alabama to human smugglers in multiple countries for the express purpose of assisting the illegal entry of Almuntaser and Mahmood Naji Saad Al Qamus ("Qamus") into the United States. [*Id.*] In March 2021, Almuntaser illegally entered the United States between points of entry in California. Almuntaser claimed asylum when U.S. Customs and Border Patrol agents encountered him. Almuntaser has been living in the United States since that time.

<u>Analysis</u>

A defendant shall be detained prior to trial if a court finds that there "no conditions or combinations of conditions that will reasonably

2

assure the presence of the person as required." 18 U.S.C. § 3142(e)(1). Factors for a court to consider when making this determination following a detention hearing include, but are not limited to, the nature and circumstances of the offense, the weight of the evidence, and ties to the community. 18 U.S.C. § 3142(g).

A.  Nature and Circumstances of the Offense

The money laundering conspiracy with which Almuntaser is charged involved the international movement of funds for the express purpose of paying human smugglers to illegally transport Almuntaser and Qamus across international borders. The money wired as part of this conspiracy allowed Almuntaser to astonishingly and successfully cross eight international borders without a passport.[1] Clearly, lack of a passport or other official travel documents is no hinderance to Almuntaser's international movement. Furthermore, Almuntaser now has extensive knowledge of human trafficking networks and is comfortable using them. This scheme Almuntaser used to illegally enter the United States could be replicated to move him out of the United

---

[1]  (1) Ecuador to Colombia; (2) Colombia to Panama; (3) Panama to Costa Rica; (4) Costa Rica to Nicaragua; (5) Nicaragua to Honduras; (6) Honduras to Guatemala; (7) Guatemala to Mexico; and (8) Mexico to the United States.

3

States as well. All of this makes it nearly impossible to mitigate Almuntaser's flight risk.

It is also important to note that Almuntaser illegally entered the United States between points of entry. While he did claim asylum when encountered by federal agents, he did not do this properly by going to an entry point and filing a claim. Almuntaser's choice to cross the border in the desert rather than at an entry point strongly suggests that his actual desire was to get into the United States undetected, not to legitimately seek refuge here as an asylee. Furthermore, Almuntaser's asylum claim appears to be nothing more than an excuse to cover his actual motivation for entering this country. Almuntaser did not flee to the United States to escape persecution in war-torn Yemen. Almuntaser left Yemen in 2018 and lived in Djibouti, Egypt, and Ecuador for nearly two years, and traveled between these countries using his legitimate Yemeni passport. Salim and Nagi wired nearly $16,000.00 to human smugglers for the purpose of illegally transporting Almuntaser and Qamus across international borders. This was more than enough money for them both to fly to the United States using their legitimate passports. However, rather than seek any lawful means to enter the United States, their actions make it clear that they were attempting to be inconspicuous.

Despite the fact that they lived together in Ecuador, and the fact that they both were attempting to enter the United States, and the fact that they both had the same source of supply to help them get here — *i.e.*, the money sent by Salim and Nagi, Almuntaser and Qamus purposely traveled separately on their journey north. Ultimately, their plan worked and one of them, Almuntaser, made it into the United States.

This conspiracy is centered on a plan to illegally sneak Almuntaser and Qamus across international borders. Illegal international travel is at the very heart of this case. If Almuntaser is released pending trial, there is a strong likelihood that he would have the means and the knowledge of how to get out of the United States undetected. There are no conditions that will adequately mitigate this risk.

B.   Weight of the Evidence

To prove the money laundering conspiracy offense, the United States must prove that: "(1) two or more people agree to try to accomplish a common and unlawful plan to [commit international money laundering]; and (2) the defendant knew about the plan's unlawful purpose and voluntarily joined in it." There is substantial, admissible evidence by which the United States will prove these elements.

5

During this investigation, numerous subpoenas were issued and search warrants executed. Through these processes, the FBI uncovered the communications between all four co-conspirators in which they discuss the need to send money to specifically identified human traffickers so that Almuntaser and Qamus could be smuggled along the route from Ecuador to the United States. Documents received from various money transmitters show that Salim and Nagi, or other individual's acting at their direction, actually sent the money from the Southern District of Alabama to locations outside the United States. The communications make clear that all four co-conspirators understood why the money was being wired to these human traffickers — to facilitate Almuntaser's and Qamus' journey with the goal of illegally entering the United States.

C.   Ties to the Community

Although he has ties to EDMI, Almuntaser has zero ties to the Southern District of Alabama. There is no indication that he has ever been to that district. In other words, it would have to take a gigantic leap of faith by a court in EDMI to expect defendant to voluntarily travel to Mobile, Alabama to face these money laundering charges. Rather, after illegally entering the United States and claiming asylum, Almuntaser

6

was released by federal agents. Thereafter, he lived in North Carolina, New York, Colorado, and Michigan. There is nothing tying Almuntaser to the Southern District of Alabama. Not work, not family, not anything. Moreover, the near certainty of spending a few years in federal prison, followed by removal, renders whatever family ties here irrelevant – <u>he's going to be permanently separated from them one way or another.</u>

## II.    Argument

Under the Bail Reform Act, a defendant must be detained pending trial if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Act requires detention whenever the defendant is either a risk of nonappearance or a danger to the community. *See id.*; *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). A finding of dangerousness "must be 'supported by clear and convincing evidence.'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(f)(2)). But the government need only demonstrate the risk of nonappearance by a preponderance of the evidence. *Hazime*, 762 F.2d at 37.

7

When, as here, a defendant is a noncitizen, factors relevant to the detention decision include: the defendant's alienage, immigration history, current immigration status (or lack thereof), the use and possession of fraudulent identity documentation, foreign ties, and the likelihood of deportation or removal following the conclusion of the criminal case. The Sixth Circuit and other courts have recognized that the prospect of deportation or removal from the United States presents an incentive to voluntarily flee before trial. *U.S. v. Arhebamen*, 69 Fed.Appx. 683, 2003 WL 21525118 (6th Cir. Jul. 2, 2003) (defendant's pending immigration proceedings a factor supporting pretrial detention); *U.S. v. Shuklin*, 2020 WL 2992522 (6th Cir. Mar. 18, 2020) (flight risk is supported by, among other factors, "the potential for deportation, and [] family abroad."); *U.S. v. Cadado-Hernandez*, 2021 WL 4344053 (10th Cir. Sep. 24, 2021) ("Because the defendants face a likelihood of deportation after serving whatever sentence may be imposed in their criminal cases, they have an enhanced incentive to return voluntarily now and evade prosecution.")

An immigration detainer has been lodged with the U.S. Marshals, and if ordered released, the defendant may transfer into immigration custody for the civil enforcement of the immigration laws and the likely

8

removal of the defendant from the United States. There can be little doubt that if removed before trial, the defendant will not voluntarily present himself at a port of entry for future criminal proceedings. And the prospect of removal to a foreign country following conviction with the potential of up to 20 years in prison undoubtedly presents an incentive to abscond before conviction. Notably, the Bail Reform Act does not "compel district courts to turn a blind eye to [the] realit[y]" that a likelihood of removal *after* conviction presents an incentive for voluntarily fleeing *before* conviction. *Casado-Hernandez*, 2021 WL 4344053 (10th Cir. Sep. 24, 2021) (emphasis added). Here, removal is a very real possibility after conviction, and the defendant would have no reason to present himself for a trial and sentencing.

      For all of these reasons, and given the specific factors set forth in 18 U.S.C. § 3142, discussed above, the preponderance of evidence proves that the defendant is a risk of flight and non-appearance, and that no condition or combination of conditions will reasonably assure his appearance.

9

## III.  Conclusion

Respectfully, the Court should detain the defendant.

                                              Respectfully Submitted,

                                              JULIE A. BECK
                                              Acting United States Attorney

                                              <u>s/ Eric M. Straus</u>
                                              ERIC M. STRAUS
                                              Assistant U.S. Attorney
                                              United States Attorney's Office
                                              211 W. Fort St.
                                              Detroit, MI 48226

Dated: February 18, 2025

## Certificate of Service

I hereby certify that on February 18, 2025 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

                                             *s/Eric M. Straus*
                                             ERIC M. STRAUS
                                             Assistant United States Attorney
                                             United States Attorney's Office
                                             211 W. Fort Street, Suite 2001
                                             Detroit, MI  48226
                                             Eric.Straus@usdoj.gov
                                             (313) 226-9648
                                             P38266